UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | S1-4:07 CR 175 JCH |
| ) | DDN |
| MICHAEL SHANAHAN, SR., ) | |
| MICHAEL SHANAHAN, JR., and ) | |
| GARY C. GERHARDT, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This action is before the court upon the joint pretrial motions of the defendants for the early return of subpoenas (Doc. 108) and for leave to serve Rule 17 (c) subpoenas (Doc. 141). The subpoenas seek documents from three entities: (1) PricewaterhouseCoopers (PwC), the outside auditors of Engineered Support Systems, Inc. (ESSI); (2) DRS Technologies, Inc. (DRS), the company that acquired ESSI; and (3) Thompson Coburn LLP (Thompson Coburn), a law firm that performed legal work for ESSI. After the hearing on these matters, the parties were able to reach an agreement on a number of the provisions within the desired subpoenas. Only a few provisions of the subpoenas remain in dispute. (Doc. 142 at 2; Doc. 149 at 1.)

The defendants are charged by superseding indictment with conducting, while corporate officers of ESSI, a scheme, between 1996 and August 2006, to defraud by backdating options to purchase stock in ESSI, and with causing ESSI to make false statements in public filings with the Securities and Exchange Commission to the effect that the subject stock options were "in the money" or "at the money."[1] Defendants have pled not guilty to the charges.

Defendants state that the government has provided them with some 50,000 documents, some of which were obtained from ESSI, PwC, DRS, and

---

[1] The superseding indictment alleges that "in the money" or "at the money" refers to the price, at which the option would be exercised, equal to the company's market price on the day the options were granted or authorized. (Doc. 51 at ¶¶ 7, 10.)

Thompson Coburn. They also state that they have made an initial determination that the materials provided by the government do not include the documents they seek by the subpoenas and that the government has indicated that it does not have the subject documents.

The government does not object to an early return of the subpoenas, but objects to some of the documents sought by defendants.

**Rule 17(c) Standard**

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). The scope of Rule 17(c) is more narrow than the corresponding rules of civil procedure, which permit broad discovery. United States v. Reyes, 239 F.R.D. 591, 597 (N.D. Cal. 2006). Rule 17(c) was not intended to serve as a discovery device for criminal cases. United States v. Nixon, 418 U.S. 683, 698 (1974). Instead, Rule 17(c) seeks to expedite a trial by providing a time and place before trial for the inspection of subpoenaed materials. Id. at 698-99. In complex criminal cases, the Supreme Court has noted the utility of using Rule 17(c). See id. at 699 n.11. To gain access to the desired documents, the moving party must show that the subpoenaed documents are: (1) relevant; (2) admissible; and (3) requested with adequate specificity. Id. at 700; United States v. Hardy, 224 F.3d 752, 755 (8th Cir. 2000).

A request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate. United States v. RW Prof'l Leasing Servs. Corp., 228 F.R.D. 158, 162 (E.D.N.Y. 2005). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991). The specificity and relevance requirements demand more than the title of a document and conjecture concerning its

contents. Hardy, 224 F.3d at 755. The specificity requirement ensures that a Rule 17(c) subpoena will not be used just to see "what may turn up." United States v. Libby, 432 F. Supp. 2d 26, 32 (D.D.C. 2006).

Even when the moving party has shown that a subpoena seeks relevant, admissible, and specific evidence, a court must still consider other factors, including whether: (1) the materials could be obtained otherwise, before trial, by the exercise of due diligence; (2) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (3) the request for the materials is made in good faith and not as a general "fishing expedition." See Nixon, 418 U.S. at 699-700. A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the subpoena calls for privileged matter. Fed. R. Crim. P. 17(c)(2); Reyes, 239 F.R.D. at 598.

**Instruction 8**

Each proposed subpoena includes an identical set of instructions. Instruction 8 reads, "[u]nless otherwise stated, the 'relevant time period' for subpoenaed document[s] is January 1, 1996 to present." (Doc. 142, Ex. 1 at 5, 15, 24.)

The government objects to this proposed instruction. The government argues that the relevant period should run from January 1, 1996, to August 2006, the period covered by the superseding indictment. (Doc. 149 at 2.) The defendants argue that there may be relevant and admissible materials created after August 2006. In particular, they argue that Steven Landmann, a government witness, conducted an analysis of ESSI's stock options, and "there are likely documents relating to that analysis which were created after August 2006." (Doc. 142 at 5.)

Looking to Hardy and Noriega, the defendants have not reasonably specified the information believed to be contained in documents created after August 2006. The defendants "believe that there are" and state "there may be" documents created after August 2006, but provide nothing more precise than such conjecture. Instruction 8 must be modified to limit the relevant time period to January 1, 1996, to August 31, 2006.

See United States v. Ferguson, 3:06 CR 137 CFD, 2008 WL 113663, at *1 n. 1 (D. Conn. Jan. 2, 2008) (enforcing subpoenas only for the period during which "many of the events alleged in the indictment occurred"); see also United States v. Salvagno, 267 F. Supp. 2d 249, 253 (N.D.N.Y. 2003) (quashing subpoena that sought documents for a time period far exceeding the conduct charged by the indictment).

**Request 14 to DRS**

In Request 14 to DRS, the defendants seek "[c]opies of any and all documents referring to or relating to any agreements or arrangements between the government and DRS, including but not limited to any agreement by DRS not to file suit against or take other action against any former ESSI employee or ESSI Board member." (Doc. 142, Ex. 1 at 20.)

The government anticipates that a representative of DRS will testify at trial, but objects to Request 14, arguing that the defendants already have the information sought. (Doc. 149 at 4.) As set forth above, defendants state they do not want production of documents already produced. However, neither party has suggested a reasonable process for comparing the documentary requests at issue with the large number of documents produced to the defendants. The defendants argue the documents in Request 14 are relevant to the bias of potential witnesses and DRS's status as an alleged victim. (Doc. 142 at 6.)

The language of Request 14 seeks impeachment evidence. As a general rule, "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial under Rule 17(c)." Hardy, 224 F.3d at 756 (quoting Nixon, 418 U.S. at 701). The term "impeachment" also refers to the bias or interest of a witness, the witness's ability to observe an event in issue, or a witness's prior statement that is inconsistent with his or her current testimony. Berry v. Oswalt, 143 F.3d 1127, 1132 (8th Cir. 1998). Under Nixon, the defendants may not use a Rule 17(c) subpoena for this purpose.

The defendants also argue that Request 14 is relevant because it speaks to DRS's status as an alleged victim. Relevant evidence is "evidence having any tendency to make the existence of any fact that is

- 4 -

of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In this case, the defendants are charged, among other things, with conspiracy to commit mail fraud and wire fraud against DRS. (Doc. 52 at 13.) The descriptions of documents in Request 14 do not relate to whether or not the defendants committed fraud against DRS or whether or not the defendants committed any of the other acts alleged in the superseding indictment. The defendants have not shown the documents are relevant under Nixon.

The motion for leave to serve Rule 17(c) subpoenas is denied as to Request 14 to DRS.

**Request 15 to DRS, and Request 14 to PwC and Thompson Coburn**

In Request 15 to DRS, and Request 14 to PwC and Thompson Coburn, the defendants seek "[c]opies of any and all documents referring to or relating to any suggestion or statement by [DRS / PwC / Thompson Coburn] to any employee [, partner or member] regarding cooperation with the government related to this case." (Doc. 142, Ex. 1 at 10, 20, 29.)

The defendants argue the government is compelled to produce this material under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), and that the documents are relevant and admissible for the purposes of Rule 17(c). (Doc. 142 at 6.) The government has stated that it will comply with its obligations under Brady, Giglio, and the Jenks Act, 18 U.S.C. § 3500. Further, the government objects to this proposed request, arguing that any statements between witnesses and their employers, not already covered by Brady or Giglio, are not discoverable. The government also argues that the request is a purely speculative discovery request. (Doc. 149 at 4-5.)

In this instance, the documents requested would be inadmissible hearsay. Hearsay is any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). In Reyes, the defendant subpoenaed "summaries, notes and memoranda related to the interviews of [company] employees." Reyes, 239 F.R.D. at 600. The court found these documents included only hearsay. Id. And to the

extent the defendant wanted evidence of what a law firm told the government about these interviews, "the materials would be hearsay-upon-hearsay." Id. The defendants are seeking documents related to out-of-court statements made by a company or law firm to its employees concerning their cooperation or potential cooperation with the government. These documents constitute hearsay and fail the admissibility requirement of Nixon.

The motion for leave to serve Rule 17(c) subpoenas is denied as to Request 15 to DRS, and Request 14 to PwC and Thompson Coburn.

**Request 17 to DRS, and Requests 16 and 17 to PwC and Thompson Coburn**

In Request 16 to PwC and Thompson Coburn, the defendants seek "[c]opies of any and all documents relating to [or referring to] communications with any of the following relating to this case or ESSI: the United States Attorneys' Office, the SEC, the Department of Justice, the U.S. Postal Inspection Service, or the FBI." (Doc. 142, Ex. 1 at 10, 29.) In Request 17 to DRS, the defendants seek "[c]opies of any and all documents relating to or referring to requests for documents from DRS by the United States Attorneys' Office, the SEC, the Department of Justice, the U.S. Postal Inspection Service, or the FBI." (Id. at 20.) In Request 17 to PwC and Thompson Coburn, the defendants seek "[c]opies of any and all documents relating or referring to communications with any of the following relating to this case or ESSI: DRS or agents, employees or attorneys of DRS." (Id. at 10, 29.)

The defendants argue these documents are admissible, relevant, and may indicate the bias of a potential witness. (Doc. 142 at 6-7.) The government objects to these requests, arguing the defendants already have the underlying records. The government also argues the defendants fail to state the relevancy or admissibility of any such communications. Instead, the government argues defendants' requests represent a general type of fishing expedition. (Doc. 149 at 6-7.)

For each of these requests, the defendants do not specify what these documents say or show, or why they need them, other than to say that "they may indicate potential witness bias." The specificity requirement of Rule 17(c) is not satisfied if "the defendant does not

- 6 -

know what the evidence consists of or what it will show." United States v. Johnson, CR 94-0048 SBA, 2008 WL 62281, at *2 (N.D. Cal. Jan. 4, 2008). A defendant's belief that subpoenaed materials _may_ show bias does not satisfy Nixon's specificity requirement. See United States v. Weissman, 01 CR 529 BSJ, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002).

In addition, the defendants have requested "any and all documents relating to" the subject matter, with "relating to" broadly defined in the instructions. See United States v. Louis, 04 CR 203 LTS, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (quashing Rule 17(c) subpoena that sought "'any and all' documents relating to several categories of subject matter (some of them quite large), rather than specific evidentiary items"). In quashing the subpoena, the Louis court also noted how the defendant had broadly defined the term "relating to." Louis, 2005 WL 180885, at *5 n.8. In another case, a court noted that the defendant's request for "'all documents relating or referring to'" could amount to "a massive search for countless documents . . . ." RW Prof'l Leasing Servs. Corp., 228 F.R.D. at 164.

Finally, as noted above, "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial under Rule 17(c)." Hardy, 224 F.3d at 756 (quoting Nixon, 418 U.S. at 701). These requests fail the Nixon test.

The motion for leave to serve Rule 17(c) subpoenas is denied as to Request 17 to DRS, and Requests 16 and 17 to PwC and Thompson Coburn.

**Requests 19 and 20 to PwC and Thompson Coburn**

In Request 19 to PwC and Thompson Coburn, the defendants seek:

> Copies of any and all documents relating to or referring to any PwC policies, practices, guidelines and for any review, audit or analysis, examination or reporting concerning stock options or stock option issues, including any such documents regarding accounting for stock options and reporting of stock options in SEC filings, to the extent such documents were used in or were applicable to any work PwC performed for ESSI.

In Request 20 to PWC and Thompson Coburn [2], the defendants seek:

> Copies of any [and] all documents relating to or referring to any PwC forms or other documents used for reviewing, auditing, analyzing or examining stock options or stock option issues, or accounting of stock options or reporting of stock options, to the extent such documents were used in or were applicable to any work PwC performed for ESSI.

(Doc. 142, Ex. 1 at 11.)

In this case, only the language "or were applicable to" is in dispute. The defendants argue the language should be included in the subpoenas because the guidelines that applied to PwC's work for ESSI are as important as the documents that PwC actually used for its ESSI work. (Doc. 142 at 7-8.) The government argues, and the court agrees, the language should not be included in the subpoenas because any potential witnesses would not have personal knowledge of the documents, thereby violating the witness personal knowledge requirement of Federal Rule of Evidence 602. (Doc. 149 at 7-8.)

Even without the disputed language, the scope of the requests is vast. See Reyes, 239 F.R.D. at 605-06. In Reyes, the defendant was seeking all documents relating to the policies for option grants of a large accounting firm, over a five-year period. Id. at 605. The court found the request "enormous in scope," and indicative of a "quintessential fishing expedition." Id. at 605-06. In this case, the defendants are seeking similar documents from a large law firm and a large accounting firm, over a ten-year period. Including the "or were applicable to" language would only serve to expand an already vast request. Where a defendant requests "any and all information related to a particular policy or procedure, courts have rejected such requests as an abuse of Rule 17(c)." Id. at 606. Looking to Reyes and Nixon, the "or were applicable to" language must be deleted from subpoena Requests 19 and 20 to PwC and Thompson Coburn.

---

[2] In their memoranda the parties refer to Request 20 to Thompson Coburn. (Doc. 142 at 2, 7; Doc. 149 at 7.) However, the copy of the subpoena provided to the court includes 19 requests to Thompson Coburn. (Doc. 142, Ex. 1 at 30.) The court assumes that the Request 20 indicated for PwC is intended for Thompson Coburn.

**Remaining Instructions and Remaining Requests**

The government does not object to any of the remaining instructions or remaining requests. The motion for leave to serve Rule 17(c) subpoenas is therefore granted as to the remaining requests.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the joint motions of defendants for leave to serve Rule 17(c) subpoenas and for an early return thereof (Docs. 108, 141) are sustained, except as follows:

(a)  Instruction 8 shall be modified to state that the relevant time period runs from January 1, 1996, to August 31, 2006.
(b)  The motions are denied as to Requests 14, 15, and 17 to DRS Technologies, Inc., and Requests 14, 16, and 17 to Thompson Coburn LLP and PricewaterhouseCoopers.
(c)  Requests 19 and 20 to Thompson Coburn LLP and PricewaterhouseCoopers shall omit the language "or were applicable to."


    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 3, 2008.