UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )
        v.                           )        S1-4:07 CR 175 JCH
                                     )                        DDN
MICHAEL SHANAHAN, SR.,               )
MICHAEL SHANAHAN, JR., and           )
GARY C. GERHARDT,                    )
                                     )
            Defendants.              )

                     **MEMORANDUM AND ORDER**

        This action is before the court upon the motions of non-parties
Thompson Coburn LLP (Doc. 179), DRS Technologies, Inc. (DRS) (Doc. 181),
and Pricewaterhouse Coopers LLP (PwC) (Doc. 183) to quash defendants'
Rule 17(c) subpoenas.  On March 3, 2008, after ruling the government's
objections, the court granted the joint motions of defendants to serve
Rule 17(c) subpoenas on the three non-parties listed above.  (Doc. 175);
United States v. Shanahan, No. S1-4:07 CR 175 JCH, 2008 WL 619213, at
*6 (E.D. Mo. March 3, 2008).  The non-parties move to quash these
subpoenas.[1]   The government does not raise any objections to the
subpoenas.

        On April 29, 2008, the court held a hearing on the motion to quash
the Rule 17(c) subpoenas.  After the hearing, the defendants were able
to reach an agreement with non-parties PwC and Thompson Coburn.  (Doc.
213.)  According to the agreement, there are no longer any issues in
dispute.  The motions of non-parties PwC and Thompson Coburn to quash
defendants' Rule 17(c) subpoenas are therefore denied as moot.

        The defendants were unable to reach a complete agreement with DRS
concerning the motion to quash.  Request 1, Request 5, Request 8,
Request 9, Request 12, and Request 13 remain in dispute.  (Doc. 215.)

---

        [1]Thompson Coburn, DRS, and PwC were not parties to the original
motions to serve subpoenas and did not have an opportunity to challenge
these subpoenas.  They are therefore not estopped from bringing the
current motions to quash.  See United States v. Reyes, 239 F.R.D. 591,
595 (N.D. Cal. 2006) (anticipating motions to quash from subpoenaed
third-parties).

**Rule 17(c) Standard**

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). The scope of Rule 17(c) is more narrow than the corresponding rules of civil procedure, which permit broad discovery. Reyes, 239 F.R.D. at 597. Rule 17(c) was not intended to serve as a discovery device for criminal cases. United States v. Nixon, 418 U.S. 683, 698 (1974); United States v. Bueno, 443 F.3d 1017, 1026 (8th Cir. 2006). Instead, Rule 17(c) seeks to expedite a trial by providing a time and place before trial for the inspection of subpoenaed materials. Id. at 698-99. In complex criminal cases, the Supreme Court has noted the utility of using Rule 17(c). See id. at 699 n.11. To gain access to the desired documents, the moving party must show that the subpoenaed documents are: (1) relevant; (2) admissible; and (3) identified or described with adequate specificity. Id. at 700; United States v. Hardy, 224 F.3d 752, 755 (8th Cir. 2000).

Of these three requirements, "[s]pecificity is the hurdle on which many subpoena requests stumble." United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997). A request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate. United States v. RW Prof'l Leasing Servs. Corp., 228 F.R.D. 158, 162 (E.D.N.Y. 2005). As the period of time increases, so must the subpoena's particularity. Application of Linen Supply Cos., 15 F.R.D. 115, 118 (S.D.N.Y. 1953). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991). The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents. Hardy, 224 F.3d at 755. The specificity requirement ensures that a Rule 17(c) subpoena will not be

used just to see "what may turn up."  <u>United States v. Libby</u>, 432 F. Supp. 2d 26, 32 (D.D.C. 2006).  The specificity requirement also ensures that a subpoena will only be used to secure, for trial, a sharply defined group of documents.  <u>Ruedlinger</u>, 172 F.R.D. at 456.

Even when the moving party has shown that a subpoena seeks relevant, admissible, and specific evidence, a court must still consider other factors, including whether: (1) the materials could be procured through other means, before trial, by the exercise of due diligence; (2) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (3) the request for the materials is made in good faith and not as a general "fishing expedition."  <u>See</u> <u>Nixon</u>, 418 U.S. at 699-700.  A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the subpoena calls for privileged matter.  Fed. R. Crim. P. 17(c)(2); <u>Reyes</u>, 239 F.R.D. at 598.

**Subpoena to DRS Technologies, Inc.**

The defendants seek fourteen sets of documents from DRS.  (Doc. 181, Ex. A.)  After the hearing, the defendants agreed to withdraw a number of these requests.  Only Request 1, Request 5, Request 8, Request 9, Request 12, and Request 13 remain in dispute.  (Doc. 215.)

DRS objects to each of these requests, arguing the subpoena violates Rule 17(c) and must be quashed in its entirety.  In particular, DRS argues the subpoena requests lack specificity, are overly broad, and seek privileged documents.  DRS also argues the documents requested can be obtained by other means, and that the subpoena should be directed to Engineered Support Systems, Inc. (ESSI) and not DRS.  Finally, DRS argues the subpoena requests are unreasonable and oppressive.  (Doc. 182.)

The defendants dispute each of these arguments.  (Doc. 188.)

**Request 1**

The defendants' first request seeks the following:

Copies of any and all documents relating to ESSI stock
options, including but not limited to:

a.   documents referring to or relating to the granting,
     awarding, issuance, re-issuance, cancellation, or
     allocation of ESSI stock options;

b.   documents relating to the receipt of ESSI stock
     options;

c.   documents referring to or relating to the creation,
     review, or revision of any letter, certificate, or
     other document regarding ESSI's stock option grants;

d.   documents referring to or relating to the measurement
     date, grant date, or issuance date of any ESSI stock
     options;

e.   documents referring to or relating to the pricing, re-
     pricing, strike price, or value of any ESSI stock
     options;

f.   documents referring to or relating to accounting
     concerning stock options and financial records
     concerning stock options;

g.   documents concerning public statements, SEC filings, or
     other reports concerning ESSI stock options;

h.   documents constituting or relating to ESSI stock option
     plans and draft stock option plans, including the
     review and approval of such plans;

i.   documents providing the basis for awarding, granting,
     or pricing of ESSI stock options; and

j.   documents relating to or referring to legal advice
     concerning ESSI stock options.

(Doc. 181, Ex. A at 6-7.)

In addition to its general arguments to quash, DRS argues that this
request does not identify any specific documents that are relevant and
admissible.  DRS also notes that it has already provided the government
with documents that were relevant to ESSI stock option grants from 1996
to 2005.  (Doc. 182 at 13.)

As a general rule, requests for "any and all documents" are
emblematic of a discovery request or of a fishing expedition.  Libby,
432 F. Supp. 2d at 32; United States v. Louis, No. 04 CR 203 (LTS), 2005
WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005); United States v. Jackson, 155

F.R.D. 664, 668 (D. Kan. 1994). Subpoenas should not be worded in non-exclusive and open-ended terms. United States v. Jenks, 517 F. Supp. 305, 307 (S.D. Ohio 1981). Subpoenas must do more than request a broad array and a large number of documents. Jackson, 155 F.R.D. at 668. Instead, the defendant must seek access to a discrete document or a discrete set of existing written materials. Reyes, 239 F.R.D. at 599.

The defendants' first request and its subparts fail to ask for discrete sets of documents. See Jackson, 155 F.R.D. at 668 (employing terms like "'any and all documents' or 'including, but not limited to' [are] indicia of a fishing expedition.") Instead, each subpart is worded in general terms, with several subcategories requesting "documents referring to or relating to" the documents requested. See RW Prof'l Leasing Servs., 228 F.R.D. at 164 (finding request for "all documents relating or referring to" could amount to a massive search for countless documents). In their response, the defendants dispute DRS's arguments; they do not reasonably specify the information contained or believed to be contained in the stock option documents. See Noriega, 764 F. Supp. at 1493.

In Reyes, the court found that a request for "the production of any and all information related to stock options" issued over a five-year period, involving a multi-million dollar company with thousands of employees, was enormous in scope, and represented the quintessential fishing expedition. Reyes, 239 F.R.D. at 605-06. In this case, the defendants' first request seeks "any and all documents relating to ESSI stock options" issued over a ten-year period, involving a multi-million dollar company.

Looking to the cases cited above, the motion to quash Request 1 is granted.


**Request 5**

The defendants' fifth request seeks "[c]opies of any and all documents referring to or relating to any analysis, review, [or] audit [] that related to ESSI's stock options, including but not limited to those conducted by PwC, Thompson Coburn, Landmann, or any other person or entity." (Doc. 181, Ex. A at 8.)

DRS argues that this request does not identify any specific documents. DRS also argues that if documents relating to this request existed, they would have already been provided to the government, and are otherwise procurable. DRS notes that it is not aware of any analysis of ESSI stock options prepared by PwC, Thompson Coburn, or Landmann after DRS's acquisition of ESSI. (Doc. 182 at 16.)

The defendants' fifth request fails to satisfy the <u>Nixon</u> requirements. In <u>Ruedlinger</u>, for example, the defendant sought "<u>any and all audit reports</u> prepared by the Internal Revenue Service pertaining to DRI (Doug Ruedlinger, Inc.) and/or Wheatland Group Holdings, Inc. [the defendant's companies] during the 1990's time period." <u>Ruedlinger</u>, 172 F.R.D. at 455 (emphasis added). In quashing the subpoena, the court found the request failed the <u>Nixon</u> requirements of relevancy, admissibility, and specificity, and was little more than a "fishing expedition for something potentially useful." <u>Id.</u> at 457.

Defendants' Request 5 uses language broader than that used in <u>Ruedinger</u> and seeks documents that relate or refer to any audit of ESSI's stock options. The request also seeks documents that relate or refer to any analysis or review of ESSI's stock options. Like the request in <u>Ruedlinger</u>, Request 5 covers a ten-year period. Finally, Request 5 seeks documents "including, but not limited to" those that would have been prepared by DRS, PwC, Thompson Coburn, Landmann, "or any other person or entity." <u>See</u> <u>Libby</u>, 432 F. Supp. 2d at 36, 38-39 (finding "any employee or agent" language was part of the reason the request represented a fishing expedition); <u>Jackson</u>, 155 F.R.D. at 668 (noting that terms like "'including, but not limited to' [are] indicia of a fishing expedition.") Looking to <u>Ruedlinger</u>, <u>Libby</u>, and <u>Jackson</u>, the motion to quash Request 5 is granted.

**Request 8**

The defendants' eighth request seeks "[c]opies of ESSI's Form 10-Ks, Form 10-Qs, and Proxy Statements during the relevant time period (and, for DRS, any such documents after DRS's acquisition of ESSI), together with drafts and other documents relating to the preparation of such securities filings." (Doc. 181, Ex. A at 8.)

DRS argues that this request does not identify any specific documents. DRS also argues the SEC filings are publicly available, and thus otherwise procurable. Finally, DRS argues the request for drafts and other documents is overly broad and unduly burdensome, and includes privileged documents. (Doc. 182 at 18.)

The defendants' eighth request, as written, fails to ask for relevant or a discrete set of documents. "Drafts, by their very nature, rarely satisfy the test of relevance." Grossman v. Schwarz, 125 F.R.D. 376, 385 (S.D.N.Y. 1989). And absent evidence showing the relevance of a particular draft, production of draft documents is likely to produce a wasteful fishing expedition. Id. The request for "drafts and other [related] documents" fails the relevancy requirement.

However, a court may modify a subpoena for the production of documents. Fed. R. Crim. P. 17(c)(2). The request for ESSI's Form 10-Ks, Form 10-Qs, and proxy statements represents a request for a discrete and specific set of documents. The superseding indictment alleges that the defendants caused ESSI to make false statements in filings with the SEC. (Doc. 52 at ¶¶ 29-33.) These SEC filings are therefore relevant to the allegations charged by the indictment, and would be admissible at trial as business records. See Fed. R. Evid. 803(6). At the same time, the superseding indictment does not allege that the defendants caused DRS to make false statements in filings with the SEC. The request for DRS's public filings fails to satisfy the Nixon relevancy requirement.

Where the defendant shows the subpoena seeks relevant, admissible, and specific evidence, a court must still consider whether the materials are otherwise procurable reasonably in advance of trial through due diligence. Reyes, 239 F.R.D. at 598 (quoting Nixon, 418 U.S. at 702). In this case, ESSI's SEC forms and proxy statements are readily available from public sources. See In re Rent-Way Sec. Litig., 218 F.R.D. 101, 113 (W.D. Pa. 2003) (noting that SEC forms and proxy statements are public sources of information). In fact, the SEC website contains the documents requested by the defendants. U.S. Securities and Exchange Commission, http://www.sec.gov/cgi-bin/srch-edgar?text=%22Engineered%20Support%20

Systems%22&start=81&count=80&first=1996&last=2006 (providing copies of ESSI's SEC filings from 1996 to 2006, including the company's 10-K and 10-Q Forms) (last visited June 17, 2008).

At the hearing, the defendants acknowledged that these documents were publicly available, but noted the value of having the non-parties produce the documents themselves. In particular, the defendants argued that having Thompson Coburn or PwC produce these documents would illustrate that the lawyers and accountants viewed the documents in question. In addition, the defendants noted that there could be remarks or notations on the non-parties' versions of these documents. (Tr. 85-86.) Finally, the defendants state that the publicly available documents lack the signatures and formatting found only in the hard copy documents. (Doc. 224, Ex. A at 10.) These statements illustrate that the documents are not otherwise available.

The motion to quash Request 8 is denied. DRS Technologies shall produce copies of ESSI's Form 10-Ks, Form 10-Qs, and Proxy Statements during the relevant time period - from January 1, 1996, to August 31, 2006.

DRS argues that the relevant time period is too broad, and should be limited to the period from 1996 to 2002, the period covering the alleged instances of fraudulent backdating. In the alternative, DRS argues the time period should not extend beyond January 31, 2006 - the date DRS acquired ESSI. (Doc. 182 at 10.)

The undersigned disagrees. The superseding indictment alleges the defendants engaged in a scheme to defraud ESSI and DRS, and the shareholders of both, for the period of 1996 to August 2006. (Doc. 52 at ¶ 10.) As noted in the memorandum opinion, the relevant time period should track the period corresponding to the events alleged in the superseding indictment. See Shanahan, 2008 WL 619213, at *2.

**Request 9**

The defendants' ninth request seeks "[c]opies of any and all documents referring to or relating to ESSI's certifications under the Sarbanes-Oxley Act of 2002 and or compliance with or obligations under that Act." (Doc. 181, Ex. A at 8.)

DRS argues that this request does not identify any specific documents. In particular, DRS argues that Sarbanes-Oxley imposes a wide range of reporting requirements, making the defendants' request far too broad. DRS also argues the request includes privileged documents. (Doc. 182 at 18-19.)

Among its requirements, the Sarbanes-Oxley Act requires corporate officers to certify the company's financial reports. 15 U.S.C. § 7241; 18 U.S.C. § 1350; In re Hutchinson Tech. Inc. Sec. Litig., 502 F. Supp. 2d 884, 889 n.1 (D. Minn. 2007). These certifications accompany the corporation's Form 10-K and Form 10-Q filings. See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 554 (5th Cir. 2007); id. at 889-90. The SEC website also contains these certifications. U.S. Securities and Exchange Commission, http://www.sec.gov/Archives/edgar/data/772891/000106880005000407/ex31 p2.txt (certification by Gary Gerhardt of ESSI's Form 10-Q, dated June 9, 2005) (last visited June 17, 2008). The certifications themselves are therefore "otherwise procurable" and not subject to a Rule 17(c) subpoena. See Nixon, 418 U.S. at 699-700, 702.

In their request, the defendants seek "any and all documents referring to relating to" these certifications. As explained in analyzing Request 1, this language fails to identify a discrete set of documents and could amount to a massive search for countless documents. See RW Prof'l Leasing Servs., 228 F.R.D. at 164. Indeed, the second half of the request seeks all documents relating to ESSI's compliance or obligations under the Sarbanes-Oxley Act - a piece of legislation consisting of eleven titles and several dozen sections. Sarbanes-Oxley, Pub. L. No. 107-204, 116 Stat. 745 (2002). At the hearing, counsel for PwC estimated that 20,000 pages of documents would relate to this request. (Tr. 66.) The defendants' request fails to satisfy the Nixon specificity requirement.

The motion to quash Request 9 is granted.

**Request 12**

The defendants' twelfth request seeks "[a]nalysts' reports concerning ESSI and documents relating to or referring to any such analysts['] reports." (Doc. 181, Ex. A at 9.)

DRS argues that this request does not identify any specific documents that are relevant or admissible. DRS argues that any number of employees may have obtained these reports at any time, for any number of reasons. DRS also argues that it has already produced some of these reports to the government, and should not have to conduct a burdensome search for these files. Finally, DRS argues that these reports are irrelevant and inadmissible. (Doc. 182 at 20.)

In <u>Libby</u>, the court found that a request seeking records from "any employee" of <u>The New York Times</u> was not sufficiently specific to satisfy the requirements of Rule 17(c). <u>Libby</u>, 432 F. Supp. 2d at 36. In <u>Ruedlinger</u>, the court found that a request seeking "all audit reports" for a ten-year period was "little more than a fishing expedition for something potentially useful." <u>Ruedlinger</u>, 172 F.R.D. at 455, 457. In this case, the request for analysts' reports implicates any number of DRS employees over a ten-year period. Looking to <u>Libby</u> and <u>Ruedlinger</u>, the defendants have failed to show Request 12 is sufficiently specific.

The motion to quash Request 12 is granted.

**Request 13**

The defendants' thirteenth request seeks

Copies of any and all documents relating to or referring to the responsibilities and duties of ESSI individuals holding the following positions at ESSI: Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, Vice President, General Counsel, Controller, and Treasurer, including Michael Shanahan Sr., G.A. Potthoff, John Wichlenski, Gerald Daniels, Dave Mattern, Gary Gerhardt, Steve Landmann, John Bartelt, Andy Sipka, Terry Lyles, Ron Davis, Mike Donnelly, Dan Fisher, Al Kaste, and David Walsh.

(Doc. 181, Ex. A at 9.)

DRS argues that this request does not identify any specific documents that are relevant or admissible. DRS argues that this request is overly vague and could require production of almost any document ever generated or received by the listed individuals. (Doc. 182 at 21.)

In their response, the defendants assert that the request seeks documents relating to the individuals' employment responsibilities and is not unlimited in its scope. (Doc. 188 at 19.) Yet, the defendants do not specify exactly what information these documents might contain, or what kind of documents they are seeking. See Morris, 287 F.3d at 991 (finding district court properly quashed subpoena where defendant was unable to specify what the items requested would contain); see Jackson, 155 F.R.D. at 668 ("Without detailed information on the requested documents, the court is only left to speculate as to the specific nature of their contents and its relevance."). The request is broadly worded, fails to identify any of the documents by name, and resembles a general discovery request or fishing expedition. See United States v. Hang, 75 F.3d 1275, 1283-84 (8th Cir. 1996) (finding district court properly refused to authorize a broadly worded subpoena that could not identify by name the documents desired). Looking to Morris, Jackson, and Hang, the defendants have failed to show Request 13 satisfies the Nixon requirements.

The motion to quash Request 13 is granted.

The defendants have recently filed supplemental memoranda arguing that by voluntarily producing some of the materials requested by the subpoena, DRS has waived its right to assert the attorney-client privilege and work product protection to producing other related materials. The defendants also argue that DRS should provide a privilege log which describes the documents for which it is asserting privilege and protection from disclosure.

This argument is without merit, because, even though DRS has voluntarily produced materials to the defendants, it can be compelled involuntarily to satisfy the requests in the Rule 17(c) subpoena only if the subpoena's descriptions of materials sought satisfy the specificity and relevance requirements of United States v. Nixon. Generally, as set forth above, the subpoena does not satisfy the Nixon requirements.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motions of non-parties Thompson Coburn LLP (Doc. 179), and Pricewaterhouse Coopers LLP (Doc. 183) to quash defendants' Rule 17(c) subpoenas are denied as moot.

**IT IS FURTHER ORDERED** that the motion of non-party DRS Technologies, Inc. (Doc. 181) to quash defendants' Rule 17(c) subpoenas is sustained, except as to Request 8.  Not later than June 26, 2008, DRS Technologies shall produce copies of ESSI's Form 10-Ks, Form 10-Qs, and Proxy Statements from January 1, 1996, to August 31, 2006.

The parties may have ten days in which to file written objections to this Memorandum and Order.  The failure to file timely written objections will waive the right to appeal issues of fact.

 

 

 

 

 

               /S/    David D. Noce
               **UNITED STATES MAGISTRATE JUDGE**

Signed on June 17, 2008.